UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:07-CR-123(01)RM |
| | ) | |
| ARNOLD J. BREWER | ) | |

OPINION and ORDER

A one-count indictment was returned against Arnold Brewer on November 14, 2007, charging him with being a felon in possession of a firearm. Mr. Brewer has pleaded not guilty and is now before the court on his motion to suppress all items seized during the August 2007 stop of his vehicle by officers of the South Bend Police Department. Mr. Brewer contends the police illegally stopped and searched his vehicle and person in violation of the Fourth Amendment to the United States Constitution. The government filed its opposition to suppression of the items seized, and a hearing on Mr. Brewer's motion was held on February 20. For the reasons that follow, the court denies the defendant's motion.

FACTS

On August 10, 2007, police received a 911 call at approximately 2:30 a.m. from an unidentified person reporting loud noise and a commotion or fight at the Beacon Heights Apartment Complex, located just off Ardmore Trail in South Bend, Indiana. Police were dispatched to the area, and South Bend Police Officer Michael Tutino was the first officer on the scene. When he received the dispatch, Officer

Tutino was working on his computer while sitting in his squad car in a parking lot directly across from the Beacon Heights complex. As he closed his computer and began to get en route to the complex, he heard a "popping sound" come from the general area of the Beacon Heights complex. As Officer Tutino was exiting the parking lot onto Ardmore Trail, dispatch further advised of possible shots fired in the Beacon Heights complex. Officer Tutino radioed that he thought he heard shots coming from there, as well.

As Officer Tutino began to enter the Beacon Heights complex via Curtis Drive,[1] he noticed a white SUV driving towards him. According to Officer Tutino's unrebutted testimony, the vehicle appeared to be moving quickly, but slowed down when his police car came into view.[2] Officer Tutino radioed other officers advancing to the Beacon Heights complex that he had seen a white Lincoln Navigator-type vehicle leaving the complex and turning left/east onto Ardmore Trail. Officer Tutino says that because he saw police cars in the distance approaching the SUV on Ardmore, he proceeded on into the Beacon Heights complex.

Upon Officer Tutino's arrival in the apartment area, he saw a group of people start to scatter and run away. He got out of his car and yelled out, "Who's fighting here?" or "What's going on?" People responded that there was no fight,

---

[1] Curtis Drive, accessed off Ardmore Trail, provides the sole entrance and exit to the Beacon Heights apartment complex.

[2] Officer Tutino concluded that the SUV had suddenly slowed down when he observed the headlights of that vehicle dive down, indicating that the driver was breaking.

only a verbal confrontation, and that everything was over. Officer Tutino then announced that he had a report of shots being fired and asked if anyone had any more information; various people said they had heard shots come from up the street and that a white SUV that had just driven through the complex was involved. Officer Tutino radioed the officers who had stopped the white SUV on Ardmore to tell them he had received a report that the shots fired at Beacon Heights may have come from the SUV.

Officer Tutino had worked the third shift (10:00 p.m. to 6:00 a.m.) patrolling the Beacon Heights area for approximately three years. Officer Tutino was parked and working in the lot across from the Beacon Heights complex on the night in question because it's a high crime area. The report of shots being fired in that apartment complex wasn't uncommon. The white SUV he saw exiting the Beacon Heights complex on the night in question was the only moving vehicle Officer Tutino observed at that time.

Officer Randall Goering, a two-year veteran of the South Bend Police Department, was patrolling near the Beacon Heights area on August 10, 2007 when he heard dispatch reports, first, of a fight at the Beacon Heights complex and, shortly thereafter, of shots being fired at that area. Officer Goering was traveling north on Bendix Drive approaching Ardmore Trail when he heard the additional report by Officer Tutino of a white SUV leaving the Beacon Heights complex at a high rate of speed.

Officer Goering turned west onto Ardmore and a white SUV – a vehicle matching the description of the SUV seen by Officer Tutino leaving the Beacon Heights complex and the only vehicle on the street at that time – passed him in an eastbound direction. Officer Goering turned around, caught up with the vehicle after it had turned north onto Bendix Drive, and pulled over the white SUV, a Ford Expedition being driven by Mr. Brewer. Officer Goering requested that Mr. Brewer produce his license and registration and asked Mr. Brewer where he was coming from. Mr. Brewer responded that he had just left Beacon Heights. Officer Goering told Mr. Brewer that police had received a report of shots having been fired at the Beacon Heights complex and then asked Mr. Brewer if he had any weapons in the vehicle. Mr. Brewer didn't respond initially, but, after being asked a few more times, finally produced a firearm. Officer Goering then asked Mr. Brewer to get out of the car; at that time, Mr. Brewer admitted to Officer Goering (and Officer Mullins who had arrived to assist) that he had another firearm in his pocket.

Officer Goering remembers that within a few seconds of his stopping the white SUV he heard Officer Tutino's radio report that a vehicle matching the description of the SUV he [Officer Goering] had just stopped was seen by witnesses leaving the area of the Beacon Heights complex where shots had been fired. Mr. Brewer was arrested and later charged with being a felon in possession of a handgun.

DISCUSSION

4

Mr. Brewer asserts that the police lacked probable cause to stop him and, so violated his Fourth Amendment rights when they seized a handgun from his person and additional weapons (including another handgun and a 9mm rifle), ammunition, a set of brass knuckles, and a crossbow with arrows from his car. Mr. Brewer maintains that the information known to the police was insufficient to stop and/or search him. Mr. Brewer claims

> there was no known close physical proximity of this particular vehicle or defendant to the event triggering the police suspicion. The description relied on by the officers was totally lacking in particularity. The observed behavior was not suspicious. There was no information even linking the vehicle to the crime itself. Indeed, the report of shots being fired was wholly without any descriptive information that would form the basis of any particularized suspicion.

Mot., at 6.

The government responds that Officer Goering's stop of Mr. Brewer's vehicle was related to the shots fired dispatch, and his questioning of Mr. Brewer lasted only a couple minutes before Mr. Brewer admitted to having a weapon. The government maintains that viewing the totality of the circumstances and the information known by the officers at the time, "specific and articulable facts did exist to stop Mr. Brewer's vehicle for possible involvement in criminal activity." Resp., at 3.

Under Terry v. Ohio, 392 U.S. 1 (1968), police may conduct an investigatory traffic stop "if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed" and may conduct a search "even if

5

the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006). A reasonable suspicion is "something less than probable cause and more than a hunch." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000).

Evaluation of the reasonableness of an investigatory stop requires the court to determine, first, whether the officer's actions were justified at the inception of the stop and, second, whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place. United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005). Analysis of whether a stop was reasonable involves a consideration of the totality of the circumstances known to the officers at the time of the stop. United States v. Morrison, 254 F.3d 679, 681 (7th Cir. 2001). Factors to be considered include the experience of law enforcement agents, United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000); whether the stop was in a high crime area, United States v. Jackson, 300 F.3d 740, 746 (7th Cir. 2002); the proximity of the vehicle to the reported crime, United States v. Johnson, 383 F.3d 538, 543 (7th Cir. 2004); the proximity in time of the stop to the reported crime, United States v. Brown, 366 F.3d 456, 460 (7th Cri. 2004); and the behavior and characteristics of the suspect, United States v. Odum, 72 F.3d 1279, 1284 (7th Cir. 1995).

The police involved in this incident were experienced police officers – Officer Tutino with eight years on the force and Officer Goering with two – who were assigned to patrol the Beacon Heights apartment complex and surrounding area.

Officer Tutino testified that the Beacon Heights complex was considered to be a high crime area of South Bend, and it wasn't uncommon for police to receive reports of problems at that complex. On the night in question, Officer Tutino saw a white SUV leaving the Beacon Heights complex at a high rate of speed within minutes of a report of shots being fired there. Officer Tutino immediately radioed his observations relating to the white SUV to Officer Goering and other officers who were approaching the area to investigate the shots fired report. While a defendant's "mere presence in an area of expected criminal activity does not in and of itself justify an investigatory stop," United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005), Officer Tutino thought the behavior of the white SUV was sufficiently suspect to justify informing other officers about its actions. Officer Goering testified that at the time he stopped the white SUV, he considered the driver to be a suspect in the incident at the Beacon Heights complex.

When viewed individually, the circumstances confronting Officer Tutino and Officer Goering may appear innocuous, but when considered together and viewed through the eyes of experienced police officers, the totality of the circumstances facing the officers that night creates enough reasonable suspicion that criminal activity may have taken place and the white SUV may have been involved to justify Officer Goering's stop of Mr. Brewer's vehicle. *See* United States v. Cortez, 449 U.S. 411, 418 (1981) ("The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human

7

behavior; jurors as fact-finders are permitted to do the same – and so are law enforcement officers.").

## CONCLUSION

Based on the foregoing, the court concludes that the stop of Mr. Brewer's vehicle was proper and did not violate the Fourth Amendment. Mr. Brewer's motion to suppress [docket # 15] is DENIED, and the trial of this cause remains scheduled for March 3, 2008 at 9:30 a.m.

SO ORDERED.

ENTERED:   February 25, 2008

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court